**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| PATRICIA DUKES, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08 CIV 5414 (SCR) |
| | : | |
| vs. | : | |
| | : | **DEFENDANT'S  AMENDED** |
| PUTNAM NORTHERN WESTCHESTER | : | **INITIAL DISCLOSURES** |
| BOARD OF COOPERATIVE EDUCATIONAL | : | |
| SERVICES, | : | |
| | : | |
| Defendants. | : | |

_____

Defendants, by their attorneys, Shaw, Perelson, May & Lambert, LLP, as and for their Initial

Disclosures pursuant to Fed. R. Civ. P. 26 (a) (1) hereby provide the following information in the

order provided by Rule 26 (a) (1):

A. Individuals likely to have discoverable information concerning the lawful basis for the

actions of the defendants of which the plaintiff complains:

    1.      Plaintiff

    2.      Susan Micolo
            c/o Putnam/No. Westchester BOCES
            200 BOCES Drive
            Yorktown Hgts., NY 10598

    2.      Theresa Gurecki
            c/o Putnam/No. Westchester BOCES
            200 BOCES Drive
            Yorktown Hgts., NY 10598

    3.      Renée Gargano
            c/o Putnam/No. Westchester BOCES
            200 BOCES Drive
            Yorktown Hgts., NY 10598

    4.      Tom Gill
            c/o Putnam/No. Westchester BOCES

200 BOCES Drive
Yorktown Hgts., NY 10598

5.  Bill Richards
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

6.  Sara Mills-Cohen
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

7.  Nancy Rosa
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

8.  Robert E. Kelderhouse
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

9.  Doreen Sitzer
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

10.  James T. Langlois
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

11.  Student E.W.
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

12.  Nicole Messia
c/o Putnam/No. Westchester BOCES
200 BOCES Drive
Yorktown Hgts., NY 10598

13.  Catherine Pacarelli

            c/o Putnam/No. Westchester BOCES
            200 BOCES Drive
            Yorktown Hgts., NY 10598

14.    Laurie Cohen
        c/o Putnam/No. Westchester BOCES
        200 BOCES Drive
        Yorktown Hgts., NY 10598 10924
        469-3959

15.    Jennifer Lipowski
        c/o Putnam/No. Westchester BOCES
        200 BOCES Drive
        Yorktown Hgts., NY 10598

16.    Stephanie Alter
        c/o Putnam/No. Westchester BOCES
        200 BOCES Drive
        Yorktown Hgts., NY 10598

17.    Soyoung Yoon
        c/o Putnam/No. Westchester BOCES
        200 BOCES Drive
        Yorktown Hgts., NY 10598

The defendant reserves its right to supplement this list pursuant to Rule 34.

B. Documents, etc. in possession of defendants that defendants may use to support their claims or defenses.

1. Notice of Charge of Discrimination and Charge dated 3/1/07

2. December 27, 2006 memorandum to Patricia Dukes from Thomas Gill

3. January 31, 2007 letter to Patricia Dukes from Dr. James T. Langlois

4. October 30, 2006 memo from Bob Kelderhouse to Tom Gill

5. Sexual Harassment policy 5121

6. Administrative regulation on Sexual Harassment

7. Policy on Complaints and Grievances by Employees 5170

8. Equal Employment Opportunity Policy 5120

9. December 15, 2006 letter to Renée Gargano from Theresa Gurecki

10. Confidential Report of Allegation dated December 22, 2006

11. December 18, 2006 note to Mr. Gill from Stephanie Alter

12. December 21, 2006 letter to Tom Gill from Soyoung Yoon

13. December 22, 2006 letter to Patricia Dukes from Renée Gargano

14.  Undated letter from Patricia Dukes to Dr. James Langlois "to address several concerns . . . regarding my recent termination . . . ."

The defendant reserves its right to supplement this list pursuant to Rule 34.

C. Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of the judgment, etc.

Policy issued by New York Schools Insurance  Reciprocal,  Policy SBL BO 001, attached.

Dated: August 12, 2008

**Shaw, Perelson, May & Lambert, LLP**
Attorneys for Defendants


By:_____S/_____
Mark C. Rushfield, Esq. (MCR 0231)
Of Counsel
21 Van Wagner Road
Poughkeepsie,  NY 12603
845/486-4200



The New York Schools Insurance Reciprocal
333 Earle Ovington Blvd. • Uniondale NY, 11553 • (516) 227 3355 • (800) 476-9747 • Fax: (516) 227-2352

## SCHOOL BOARD LEGAL LIABILITY POLICY
## RENEWAL DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY. CLAIMS MUST BE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD AND ANY EXTENDED REPORTING PERIODS. PLEASE READ CAREFULLY.**

| POLICY NO. | SBLBO001 |
|---|---|

### ITEM 1 - NAMED INSURED

| Putnam/N Westchester - BOCES |
|---|

### ITEM 2 - MAILING ADDRESS

| 200 BOCES Drive<br>Yorktown Heights, NY 10598-4399 |
|---|

### ITEM 3

| POLICY PERIOD: FROM 07/01/2006 to 07/01/2007 12:01 A.M. AT THE INSURED'S MAILING ADDRESS |
|---|

### ITEM 4

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS.**

SBL 100 (07/01/2001)    SBL 200 (07/01/2001)    SBL 300 (07/01/2001)    SBL 310 (07/01/2001)    SBL 400 (07/01/2001)    SBL 700 (07/01/2006)
SBL 800 (07/01/2006)

### ITEM 5

| A. DEDUCTIBLE | $5,000 | EACH CLAIM |
|---|---|---|
| B. LIMIT OF LIABILITY | $1,000,000 | EACH CLAIM |
| | $1,000,000 | AGGREGATE |
| C. ANNUAL PREMIUM | | $9,606 |

NEW YORK SCHOOLS INSURANCE RECIPROCAL

_____
AUTHORIZED REPRESENTATIVE



## SCHOOL BOARD LEGAL LIBAILITY
### "SPECIAL EDUCATION" ENDORSEMENT

SBL 800 2006

THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### SCHOOL BOARD LEGAL LIABILITY POLICY

Subject to the limits of liability, coverage, exclusions, definitions and conditions of the School Board Legal Liability and all of its endorsements, it is hereby agreed that INSURING AGREEMENT SECTION D- EXCLUSIONS 12 is deleted in its entirety and replaced by the following,

D.    EXCLUSIONS

This policy does not apply to any **Claim(s),** regardless of the cause of action or legal theory alleged, related to or arising out of:

12. any pending or prior special education impartial education hearings and administrative appeals to the New York State Department of Education, including **Claims** arising out of the failure to provide an appropriate individualized education program or related facilities or services, including but not limited to, any cause of action under the Individuals with Disabilities Education Act-IDEA, 504 of the Rehabilitation Act, Americans with Disabilities Act-ADA; Article 89 of the Education Law or any similar state or federal statute or other law, administrative rule or regulation.

However, where a suit is filed in Federal Court and 1) asserts other allegations of discrimination and/or civil rights violations independent of the underlying administrative process AND 2) seeks compensatory damages other than tuition reimbursement or attorneys fees, the Company will pay **Claim Expenses** and compensatory **Damages** that are not otherwise excluded under the policy. The liability coverage for acts of discrimination must be based solely on either disparate impact, as opposed to disparate treatment, or vicarious liability.

NEW YORK SCHOOLS INSURANCE RECIPROCAL

Authorized NYSIR Representative



THE NEW YORK INSURANCE RECIPROCAL
The Omni 333 Earle Ovington Blvd., Uniondale, N.Y. 11553 • 1-800-ISNYSIR • (516) 227-3355 • Fax: (516) 227-2352

**NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. CLAIMS MUST BE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD AND ANY EXTENDED REPORTING PERIODS.**

### SCHOOL BOARD LEGAL LIABILITY COVERAGE

In consideration of the premium charged, and in reliance upon the statements in the Application attached hereto being made a part hereof, and subject to the limit of liability stated in Item 5.B. of the Declarations and all the terms, conditions and exclusions contained herein, the Company and the **Insured** agree as follows:

## I. INSURING AGREEMENTS

### A.    COVERAGE

The Company shall pay on behalf of the **Insured** all sums which the **Insured** becomes legally obligated to pay as **Damages** resulting from any **Claim** that is both first made against the **Insured** and reported to the Company during the **Policy Period and any Extended Reporting Period**, for a **Wrongful Act(s)** by the **Insured** in the performance of duties for the **School Entity.**

It is a condition precedent to coverage under this policy that the **Wrongful Act** occur;
1. during the **Policy Period** or;
2. prior to the **Policy Period**, provided that
   a) The **Insured** did not notify and/or report the **Wrongful Act** or related **Wrongful Acts** under any prior policy to which this policy is a renewal or replacement; and

   b) prior to the inception date of the first School Board Legal Liability policy issued by the Company and continuously renewed and maintained, no **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim; and**

   c) there is no other policy that provides insurance to the **Insured** for such **Wrongful Act** or **Claim.**

**B.    DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

    a) The Company shall have the right and duty to select counsel and to defend any **Claim** against the **Insured** to which this policy applies, even if such **Claim** is groundless, false or fraudulent. The Company's duty to defend shall cease upon exhaustion of the Company's applicable limit of Liability set forth in Item 5.B. of the Declarations,

    b) The Company agrees to pay on behalf of the **Insured**, in addition to the limit of liability, reasonable **Claim Expenses** the Company incurs in the defense of **Claims** seeking **Damages**.

    The Company will pay **Claim Expenses** only, subject to a per claim aggregate limit of $100,000, for a civil proceeding seeking non-monetary or injunctive or equitable relief, (if not otherwise excluded by the policy), that arises from an alleged violation of a student's federal constitutional civil rights.

    c) The **Insured** shall not admit liability, settle any **Claim,** incur any cost or expense, or assume any contractual obligation after the filing of a **Claim** without the written consent of the Company. The Company shall not be obligated to indemnify any **Insured** for **Damages** or **Claim Expenses** incurred in connection with the settlement of a **Claim** to which the Company did not provide prior consent.

    d) The Company shall have the right to make such investigation and negotiations and, with the written consent of the **School Entity**, make any settlement of any **Claim** as the Company deems expedient. If the **School Entity** refuses to consent to any settlement recommended by the Company, then the Company's liability shall not exceed the amount for which the **Claim** could have been settled plus the **Claim Expenses** incurred up to the date of such refusal.

**C.    DEFINITIONS**

    a) **Claim** means a civil proceeding alleging a **Wrongful Act** that is filed against an **Insured** in a court of law, which seeks **Damages. Claim** does not include administrative proceedings or hearings, except for administrative complaints filed with and investigated by a governmental agency that is both charged with enforcing employment discrimination laws and has the authority to award **Damages.**

    b) **Claim Expenses** means fees, costs and expenses charged by attorneys selected and retained by the Company and all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** including premiums for appeal bonds or to release attachments bond, but without any obligation to apply for or furnish any such bonds. **Claim**

**Expenses** do not include salaries, loss of earnings, or reimbursement to the **Insured** for time, expenses or attendance associated with the defense or investigation of a **Claim**.

c) **Damages** means a monetary loss for which the **Insured(s)** is legally obligated to pay as a result of a **Wrongful Act** to which this policy applies. **Damages** do not include:
   1. Punitive damages, exemplary damages or multiple damages;
   2. Criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;
   3. Matters uninsurable under the law or against public policy;
   4. Unjust profit, remuneration or advantage to which the Insured was not legally entitled, including payment or reimbursement of tuition, taxes or other restitution;
   5. Any form of non-monetary, injunctive relief or other equitable relief, including attorneys fees, costs and costs of compliance associated with a demand or proceeding for such relief, subject to SECTION. I, B.b) of the policy.
   6. Back wages, salaries, employee benefits or other forms of compensation due.
   7. Costs associated with the modification of any building or property in order to provide any reasonable accommodation required by the ADA or similar federal, state or local statute or regulation.

d) **Insured** means the **School Entity**, the Board of Education of the **School Entity**, all present and former members of the Board of Education, officers, trustees, employees, student teachers or volunteers, including all volunteer boards, but only for while acting solely within the course and scope of their duties or employment for the **School Entity.**

   **Insured** also means the estate, heirs, administrators, assigns and legal representatives of any **Insured** covered herein in the event of such **Insured's** death, but only to the extent that such **Insured** would otherwise be covered under this policy.

e) **Policy Period** means the period from the effective date of this policy to the expiration date or earlier termination date, if any.

f) **School Entity** means the entity stated in item 1 of the declarations.

g) **Wrongful Act** means any actual or alleged breach of duty, negligent error, misstatement, misleading statement or omission by an **Insured** solely in the course and scope of the **Insured's** duties or employment for the **School Entity.**

## D.    EXCLUSIONS

This policy does not apply to any **Claim(s),** regardless of the cause of action or legal theory alleged, related to or arising out of:

1.    any fraudulent, dishonest, malicious, criminal or intentional wrongful act or omission by an Insured.

2.    (a) assault or battery, (b) false arrest, detention or imprisonment, (c) wrongful entry or eviction, or other invasion of a private occupancy, (d) malicious prosecution, abuse of process, or humiliation (e) libel, slander, defamation or disparagement or violation of an individual's right of privacy;

3.    bodily injury, sickness, mental anguish or emotional distress, disease, or death of any person, or damage to or destruction of any property, including the loss of use thereof except that this exclusion will not apply to allegations of mental anguish or emotional distress arising out of the breach of an employment contract;

4.    brought as a cross claim or counterclaim by one **Insured** against another **Insured;**

5.    sexual molestation, sexual misconduct or sexual abuse including any alleged direct sexual activity and any allegation relating thereto that an **Insured** negligently employed, investigated, supervised or retained a person or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or contributed to such **Claim;**

6.    a) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or

b) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

7.    any claim out of the presence of asbestos or radon and methane gases including costs of its removal or correction;

8.    any breach of fiduciary duty, responsibility or obligation in connection with workers compensation, disability benefit, unemployment compensation,

employee benefit, retirement or pension plan, including any pension, retirement, savings or profit sharing plan subject to ERISA or similar state statute, or any violation of or failure to comply with ERISA or any similar state statute.

9.    breach of contract, except that with respect to a **Claim** for breach of an employment contract, the Company will pay **Claim    Expenses** and consequential **Damages** that exceed the amount the **Insured** was obligated to pay pursuant to such contract.

10. an alleged violation of a collective bargaining agreement or the negotiation of any dispute regarding such agreement including, but not limited to, labor or grievance arbitrations.

11. any pending or prior litigation or hearing as well as future **Claims** arising out of said pending or prior litigation or hearing, however, if this policy is a renewal of a policy issued by the Company, this exclusion shall only apply with respect to a pending or prior litigation or hearing prior to the effective date of the first policy issued and continuously renewed by the Company.

12. arising out of any pending or prior special education hearing, including **Claims** arising out of the failure to provide an appropriate individualized education program or related facilities or services, including but not limited to, any cause of action under the Individuals with Disabilities Education Act-IDEA, 504 of the Rehabilitation Act, Americans with Disabilities Act-ADA; Article 89 of the Education Law or any similar state or federal statute or other law, administrative rule or regulation.

## E.    LIMITS OF LIABILITY

1A.    <u>Each Claim</u>: The total liability of the Company for all **Damages** for each **Claim** covered by this policy shall not exceed the amount stated in Item 5.B. of the Declarations for each **Claim**.

1B.    <u>Aggregate</u>: The total liability of the Company for the combined total of all **Damages** for all **Claims** covered by this policy shall not exceed the amount stated in the Declarations as Aggregate.

The inclusion of more than one Insured in any **Claim** or the making of **Claims** by more than one person shall not increase the Company's limit of liability or the deductible. Two or more claims arising out of a single **Wrongful Act** or related **Wrongful Acts** shall be treated as a single **Claim**. All such **Claims**, whenever made, shall be considered first made during the **Policy Period** in which the earliest **Claim** was first made and reported to the Company.

(2.)   Aggregate Sublimit: For each policy year, the most we will pay for the **Damages** covered by this policy for each of the following **Wrongful Acts** is $100,000 and this amount shall be included in the total Aggregate Limit of Liability stated in Item 5.B. of the Declarations:

(a)   the failure to effect or maintain any insurance bond.
(b)   The violation or failure to comply with the administrative requirements of the Asbestos Hazard Emergency Response Act.
(c)   The failure to integrate or desegregate the student enrollment or participation in any school district.

## F.   DEDUCTIBLE

Subject to the limit of liability, exclusions and other terms of this policy, the Company shall only be liable for those **Damages** that are in excess of the deductible stated in item 5.A. of the Declarations. This deductible shall apply to each and every **Claim** and shall be paid by the **School Entity** within 30 days of demand by the Company and remain uninsured. The deductible is included within the limits of liability.

## G.   EXTENDED REPORTING PERIOD

If the Company or the **School Entity** shall cancel or refuse to renew this policy, the **School Entity** shall have the right, upon payment of an additional premium of 75% of the total policy premium, to a period of twelve (12) months following the effective date of such cancellation or non-renewal in which to give written notice to the Company of any **Claim** made against the **Insured** during said twelve (12) month period for any **Wrongful Act** which occurred before the end of the **Policy Period**. This right shall terminate, however, unless written notice of such election together with the additional premium due is received by the Company within thirty (30) days after the effective date of cancellation or non-renewal. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## II. CONDITIONS

## A.   Policy Territory
This policy applies to **Wrongful Act** committed anywhere in the world provided **Claim** is made in the United States of America, its territories or possessions, or Canada.

## B.   Notice of Claim
The **School Entity** shall, as a condition precedent to the obligations of the Company under this policy, give written notice to the Company of any **Claim**

made against the **Insured** as soon as practicable, but not later than 60 days after the expiration or termination of the **Policy Period** in which the **Claim** is first made.

In the event that suit is brought against the **Insured**, the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative.

### C.    Notice of Potential Claims

If during the **Policy Period**, or during the discovery period (if the right is exercised by the **School Entity** in accordance with Section I G) the **Insured**:

(i)    receives written or oral notice from any third party that it is the intention of such third party to hold the **Insured** responsible for the results of any **Wrongful Act**, or

(ii)   becomes aware of any **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insured**.

Written notice shall be given by the **School Entity** to the Company as soon as practicable and during the **Policy Period** or during the discovery period, if applicable, of such written or oral notice under (i) above or of such **Wrongful Act** under (ii) above.  If such written notice is given to the Company, any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act**, shall, for the purposes of this policy, be treated as a **Claim** made during the currency hereof.

All notices of **Claims**, notices of **Wrongful Acts**, applications, demands or requests provided for in this policy shall be in writing and addressed to Claims Manager, New York Schools Insurance Reciprocal, 333 Earle Ovington Blvd., Uniondale, N. Y. 11553.

### D.    Assistance and Cooperation

The **Insured** shall cooperate with the Company and, upon the Company's request, assist in making settlements and in the investigation of **Claims**. The **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses at the **Insured's** own expense.  The **Insured** shall not, except at the **Insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense.

**E.    Action Against the Company.**

No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this policy and not until the amount of the **Insured's** obligation to pay shall have been fully and finally determined either by judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the Company.

**F.    Subrogation**

In the event of any payment under this policy, the Company shall be subrogated to all of the **Insured's** rights of recovery therefore against any person or organization, and the **Insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights for the Company. The **Insured** shall do nothing to prejudice such rights. Any amount recovered in excess of the Company's total payment shall be restored to the **Insured**, less the cost to the Company of recovery.

**G.    Protection for Innocent Insureds**

Whenever coverage under this policy would be excluded, suspended or lost because of Section I D- Exclusions, subsection 1, the Company agrees that such insurance which would otherwise be afforded under this policy shall be applicable with respect to any **Insured** who did not participate in, acquiesce to, or remain passive after having personal knowledge of, such conduct.

**H.    Other Insurance**

If there is other valid and collectible insurance (whether primary, excess, contingent or self-insurance), against a **Claim** covered by this policy the insurance hereunder shall be deemed excess over and above the applicable limit of all other insurance or self-insurance. This policy is written as specific excess of coverage available under any extended reporting period, optional extended reporting period, and automatic extended reporting period or similar period in any prior policy or policies.

**I.    Cancellations**

This policy may be canceled by the **School Entity** by surrender of this policy or by giving written notice to the Company stating when thereafter such cancellation shall be effective. This policy may also be canceled by the Company by delivering to the **School Entity** or by mailing to the **School Entity** by registered, certified, or other first class mail, at the address shown in item 1 of the declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. However, if the Company cancels this policy because the **School Entity** has failed to pay a premium when due, or has failed, after demand, to reimburse the Company such amounts as the Company has paid as **Damages**, defense costs, charges or expenses within the amount of the applicable deductible, this policy may be canceled by the Company by mailing written notice of cancellation to the **School Entity** by registered, certified, or

other first class mail, at the address shown in item 1 of the declarations, written notice stating when, not less than ten (10) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this policy shall terminate at the date and hour specified in such notice.

If this policy shall be canceled by the **School Entity**, the Company shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the Company, the Company shall retain the pro rata proportion of the premium hereon payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

**J.**    **Assignment**
Neither this policy nor any **Insured's** interests under this policy may be assigned.

**K.**    **Authorization Clause**
By the acceptance of this policy, the **School Entity** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, consent to settle a **Claim**, the giving or receiving of notice of cancellation or non renewal, the payment of premiums and the receiving of any premiums that may become due under this policy. All **Insureds** agree that the **School Entity** shall act on their behalf.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and countersigned where required by law on the declarations page by a duly authorized representative of the Company.

NEW YORK SCHOOLS INSURANCE RECIPROCAL

Authorized NYSIR Representative



## NEW YORK DISCLOSURE NOTICE

## CLAIMS-MADE POLICY

### SBL 200 2001

### THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

| | |
|---|---|
| **IMPORTANT:** | This form is an addendum to your declarations page and application and is part of your policy. This form describes some of the major features of your policy. Please read it carefully. |

<u>THIS POLICY IS WRITTEN ON A "CLAIMS MADE" BASIS</u>

| | |
|---|---|
| **IMPORTANT:** | This policy provides no coverage for **Claims** arising out of incidents, occurrences or alleged **Wrongful Act(s)** which took place prior to the retroactive date stated in this policy. |
| **IMPORTANT:** | This policy covers only **Claims** actually made against the **Insured** and reported to the Company while the policy remains in effect. All coverage under the policy ceases upon the termination of the policy, except for the automatic basic extended reporting period coverage, unless the **Insured** purchases supplemental extended reporting period coverage. |
| **IMPORTANT:** | The length of the automatic basic extended reporting period is ninety (90) days. |
| **IMPORTANT:** | <u>Avoiding Coverage Gaps</u> – If this policy is not renewed when it expires, or if similar coverage is not purchased from another carrier upon expiration, a gap in coverage protection will result. This is because the automatic basic extended reporting period and the supplemental extended reporting period only provide an additional time period within which to report **Claims** that arose from <u>**Wrongful Act(s)** which occurred after the retroactive date but prior to the end of the **Policy Period**</u>. |

<u>EXTENDED REPORTING PERIODS UNDER THIS POLICY</u>

A basic Extended Reporting Period is automatically provided under the Policy without additional charge. This period starts on the date of TERMINATION OF COVERAGE and lasts for ninety (90) days.

In addition, you may purchase a "Supplemental Extended Reporting Period". This period would start ninety (90) days after the date of TERMINATION OF COVERAGE. Following are the available time period options and cost to purchase the optional "Supplemental Extended Reporting Period":

1.   One Year Option – Costs 75% of Annual Policy Premium
2.   Two Year Option – Costs 150% of Annual Policy Premium
3.   Three Year Option – Costs 225% of Annual Policy Premium

If you purchase a Supplemental Extended Reporting Period, the above time periods are the time periods after the Basic Extended Reporting Period has ended within which you can report **Claims**. However, the only **Claims** that are covered and can be reported are those **claims** arising from **Wrongful Act(s)** which occurred after the retroactive date but prior to date of TERMINATION OF COVERAGE.

<u>INCREASED PREMIUM TO MATURITY</u>

If you renew your policy on a "claims made" basis, you will experience a percentage increase in the premium for the first and second renewal. The original premium for "claims made" is substantially lower that the occurrence form and, as experience matures, the cost rises for the second and third year. At that time it is fully mature and the cost is the same as it would be for an occurrence form.

All other terms and conditions remain the same.

_____
Name of Subscriber or School Entity

_____          _____
Title of School Entity Administrator          Policy Number

_____          _____
Signature of School Entity Administrator          Date Signed
Acknowledgment by Named Insured
for the Named School Entity.

**NEW YORK SCHOOLS INSURANCE RECIPROCAL**

_____
**Authorized NYSIR Representative**



This endorsement changes the policy.  Please read it carefully.

## NEW YORK CHANGES – EXTENDED REPORTING PERIODS

SBL 300 2001

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THIS POLICY.

EXTENDED REPORTING PERIOD is deleted and replaced by the following.

EXTENDED REPORTING PERIOD:

(1) The Company will provide one or more "Extended Reporting Periods" described below where this policy is a CLAIMS MADE RELATIONSHIP.

    (a) That has continued less than one (1) year and coverage is terminated for reasons other than nonpayment of premium or fraud; or

    (b) That has continued one (1) year or more and coverage is terminated for any reason; or

    (c) That the Company renews or replaces with other than a claims made policy form.

(2) A "Basic Extended Reporting Period" is automatically provided without additional charge. The "Basic Extended Reporting Period" begins on the date of TERMINATION OF COVERAGE, and ends ninety (90) days after the date of TERMINATION OF COVERAGE. If there is other insurance against any claim for which coverage is afforded under the "Basic Extended Reporting Period", the coverage provided under the "Basic Extended Reporting Period" shall be deemed to be excess over and above the applicable limits of all such other insurance and will afford coverage only after the policy limits of such other insurance have been exhausted.

(3) In addition, up to three (3) "Supplemental Extended Reporting Periods" of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge.  The first period begins ninety (90) days after the date of TERMINATION OF COVERAGE.

(4) The **Insured**, subject to the terms and conditions set forth herein, shall have a right to select that period to which the "Supplemental Extended Reporting Period" shall apply, which in no event shall exceed thirty-six (36) months. The premium for each twelve (12)

months is seventy-five percent (75%) of the premium or rates in effect on the date this Policy was issued. The premium for "Extended Reporting Period" coverage shall be commensurate with the coverage provided. Upon TERMINATION OF COVERAGE on a date other than the Policy's anniversary date, the cost of "Extended Reporting Period" coverage shall be appropriately reduced.

(5) Within (30) days after TERMINATION OF COVERAGE, the Company will advise the **Insured** in writing of the "Basic Extended Reporting Period" coverage and the availability of, the premium for, and the importance of purchasing "Supplemental Extended Reporting Period" coverage. The **Insured** shall have the greater of ninety (90) days from the effective date of TERMINATION OF COVERAGE, or thirty (30) days form the date of mailing or delivery of the advice to submit written acceptance of "Extended Reporting Period" coverage. All premium for this Policy due the Company shall be paid by the **Insured** with the written acceptance to effect coverage. Once in effect, the "Supplemental Extended Reporting Period" may not be cancelled.

(6) If the CLAIMS MADE RELATIONSHIP has continued for at least three years, the aggregate liability limit for the "Supplemental Extended Reporting Period" shall be at least equal to 100 percent of the policy's "annual aggregate" limit.

If the CLAIMS MADE RELATIONSHIP has continued for less than three years, the aggregate liability limit for the "Supplemental Extended Reporting Period" shall at least equal the greater of :

    (a)    the limit remaining in the policy's "annual aggregate" liability limit; or
    (b)    50 percent of the policy's "annual aggregate" liability limit

(7) If the Policy is cancelled due to nonpayment of premium or fraud on the part of the **Insured**, the Company will not provide the **Insured** with a premium quotation to purchase a "Supplemental Extended Reporting Period" unless the **Insured** requests a quotation from the Company. The Company will only honor the **Insured's** request to purchase a "Supplemental Extended Reporting Period" if the **Insured** has paid all policy premiums owned to the Company.

(8) The Company will provide "Extended Reporting Period" coverage upon TERMINATION OF COVERAGE to any person covered under the Policy, if:

    (a)    the **Insured** has been placed in a liquidation or bankruptcy or permanently ceases operations;
    (b)    the **Insured** or its designated trustee does not purchase "Extended Reporting Period" coverage; and
    (c)    such person requests the "Extended Reporting Period" coverage within 120 days of the TERMINATION OF COVERAGE.

However, the Company has no obligation to provide any notice to any such person of the availability of the "Extended Reporting Period" coverage. The Company will

charge the person for whom "Extended Reporting Period" coverage is provided a premium commensurate with such coverage.

(9) The "Extended Reporting Period" is available upon decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Insured.**

(10) The Extended Reporting Periods do not extend the **POLICY YEAR** or change the scope of coverage provided.   Subject otherwise to the Policy's terms, Limit of Liability, Exclusion and Conditions, the Policy is extended to apply to claims first made during the "Basic Extended Reporting Period" or, if purchased, the "Supplemental Extended Reporting Period", but only by reason of any **Wrongful Act(s)** committed on or after the policy RETROACTIVE DATE but prior to the end of the **POLICY YEAR**.

(11) Claims for **Wrongful Act(s)** which are first received during an "Extended Reporting Period" shall be deemed to have been made on the last day of the **POLICY YEAR.**

NEW YORK SCHOOLS INSURANCE RECIPROCAL

Authorized NYSIR Representative



# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

SBL 310 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Policy Conditions paragraph I. **CANCELLATIONS** are deleted and are replaced by the following:

## 3. CANCELLATION AND NONRENEWAL

**(a)    CANCELLATION**
(1) This Policy may be cancelled by the INSURED by surrendering the Policy to the Company or any of its authorized agents, or by mailing to the Company or its authorized agents written notice stating when thereafter the cancellation shall be effective.

**(b)    CANCELLATION OF POLICIES IN EFFECT 60 DAYS OR LESS**

The Company may cancel this Policy by mailing or delivering to the INSURED written notice of cancellation at least

(1) 30 days before the effective date of cancellation if the Company cancels for any reason not included in paragraph (b)(2) below.

(2) 15 days before the effective date of cancellation if the Company cancels for any of the following reasons:

   (a) Nonpayment of premium;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim;

   (d) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any condition of the Policy, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

(e) Material change in the nature or extent of the risk occurring after issuance or last annual renewal anniversary date of the Policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

(f) Required pursuant to a determination by the Superintendent that continuation of the Company's present premium volume would jeopardize the Company's solvency or be hazardous to the interest of policyholders, creditors or the public;

(g) A determination by the Superintendent that the continuation of the Policy would violate any provision of the Insurance code.

The Company will mail or deliver a copy of every written notice of cancellation to the INSURED'S authorized agent or broker.

## c.  CANCELLATION OF POLICIES IN EFFECT FOR MORE THAN 60 DAYS

If this Policy has been in effect for more than 60 days, or if this Policy is a renewal or continuation of a Policy the Company issued, the Company may cancel this Policy only for any of the reasons listed in paragraph (b)(2) above provided we mail to the INSURED and to the INSURED's authorized agent or broker written notice at least 15 days before the effective date of the cancellation.

The Company will mail or deliver a copy of every written notice of cancellation to the INSURED'S authorized agent or broker.

**d.**    The company will mail or deliver notice, including the reason for cancellation, to the INSURED at the address shown in the Policy and to the INSURED'S authorized agent or broker.  If notice is mailed, proof of mailing will be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY YEAR.  Delivery of such written notice either by the INSURED or by the Company shall be equivalent to mailing.

If this Policy is cancelled by the INSURED, the Company shall retain the customary short rate proportion of the premium hereon.  If the Company cancels, the refund will be pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

### e. AVAILABILITY OF LOSS INFORMATION

If the INSURED receives a notice that this coverage is being terminated, information on claims and losses under this policy is available to the INSURED. To receive this information the INSURED or its insurance agent must request this information in writing.

Upon receipt of the request, the Company will mail or deliver to the INSURED within twenty (20) days the following loss information for the period of time the INSURED has been insured with us:

1. Information on closed claims, including date and description of occurrence and any payments; and

2. Information on open claims, including date and description of occurrence, and amounts of any payments; and

3. Information on notice of any occurrences, including date and description of occurrence.

NONRENEWAL AND CONDITIONAL RENEWAL CONDITIONS are added as follows:

### (a) NONRENEWAL

If the Company decides not to renew this Policy, the Company will send notice as provided in paragraph (c) below along with the reason for nonrenewal.

### (b) CONDITIONAL RENEWAL

If the Company conditionally renews this Policy subject to

1. a Change in limits;

2. a Change in type of coverage;

3. a Reduction of coverage;

4. an Increased deductible, retention or participation,

5. an Additional exclusion; or

6. Increased premiums in excess of 10% exclusive of any premium increase due to and commensurate with increased exposure units, experience rating, loss rating, retrospective rating or audit,

the Company will send notice as provided in paragraph (c) below.

**(c)    NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL**

1.  If the Company decides not to renew this Policy or to conditionally renew this Policy as provided in paragraphs (a) and (b) above, the company will mail or deliver written notice to the INSURED shown in the Declarations at least 60 but not more than 120 days before.

    (a)  the expiration date; or

    (b)  the anniversary date if this is a continuous Policy.

2.  Notice will be mailed or delivered to the INSURED at the address shown in the Policy and to the authorized agent or broker.  If notice is mailed, proof of mailing will be sufficient proof of notice.

3.  The Company will not send the INSURED notice of nonrenewal or conditional renewal if the INSURED'S authorized agent or broker or another insurer of the INSURED mails or delivers notice that the Policy has been replaced or is no longer desired.

4.  If the Company sends the INSURED an incomplete or late conditional renewal notice or a late nonrenewal notice, coverage will remain in effect at the same terms and conditions of this policy until sixty days after such notice is mailed or delivered unless the INSURED elects to cancel sooner.

5.  The limits of this Policy as shown in the Declarations will be increased in proportion to any Policy extension provided in accordance with paragraph 4 above.

**(d)    AVAILABILITY OF LOSS INFORMATION**

If the INSURED receives a notice that this coverage is being terminated, information on claims and losses under this policy is available to the INSURED.  To receive this information the INSURED or its insurance agent must request this information in writing.

Upon receipt of the request, the Company will mail or deliver to the INSURED within twenty (20) days the following loss information for the period of time the INSURED has been insured with us;

1. Information on closed claims, including date and description of occurrence and any payments; and

2. Information on open claims, including date and description of occurrence, and amounts of any payments; or

3. Information on notice of any occurrences, including date and description of occurrence.

NEW YORK SCHOOLS INSURANCE RECIPROCAL

_____
Authorized NYSIR Representative



## SCHOOL BOARD LEGAL LIABILITY
## GENERAL ENDORSEMENT

SBL 400 2001

THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

1.  This policy shall not be subject to coverage by the Property/Casualty Insurance Security Fund and the provisions of Article 76 of the New York Insurance Law. The **Insured** shall be contingently liable on a several basis for any assessment which may be unlimited and made in accordance with the New York Insurance Law.

2.  In accordance with the New York Insurance Law, the Attorney-In-Fact, with the approval of Board of Governors (as the advisory committee), and within such times as the Superintendent prescribes, may order assessments in a manner determined by the Board of Governors for amounts to provide:

    a)  Sufficient funds to make good any impairment (as defined by law);

    b)  Sufficient funds to provide any surplus required by the Superintendent of insurance or authorized by the Board of Governors;

    c)  Sufficient funds to permit the repayment of any surplus loan or other borrowing.

3.  Each subscriber (policyholder) shall pay on demand such subscriber's proportionate share of any assessment lawfully ordered or levied by the Board of Governors or the New York State Superintendent of Insurance as provided by the New York Insurance Law.

4.  The contingent liability assessment of the subscriber shall be in an amount not less than one nor more than ten times the annual premium.

5.  Any assessment shall be for the exclusive benefit of policyholders that provide for such a contingent liability and such policyholders shall not be liable to assessment in an amount greater than the ratio that the deficiency attributable to the assessable business bears to the total deficiency.

There is no change in premiums as a result of this endorsement.

NEW YORK SCHOOLS INSURANCE RECIPROCAL

Authorized NYSIR Representative



# SCHOOL BOARD LEGAL LIABILITY
## "INSURED VS. INSURED" EXCLUSION

SBL 700 2006

THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.


This endorsement modifies insurance provided under the following:

School Board Legal Liability Section I. Insuring Agreement at Part D. Exclusions


It is hereby agreed that Exclusion 4 of Part D, Section I. Insuring Agreements, is replaced with the following Exclusion:


4.  any Claim whatsoever brought by, on behalf of, or in the right of any Insured, unless:

a.    that Insured is an employee, former employee, or job applicant, and such Claim is related to that capacity as such; and

b.    such Claim is otherwise covered under this policy.

However, any cross claim or counterclaim whatsoever by, on behalf of, or in the right of one Insured against another Insured is excluded, regardless of the circumstances or basis.


NEW YORK SCHOOLS INSURANCE RECIPROCAL

Authorized NYSIR Representative